UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-351-01 |
| | ) | (ESH) |
| JAMES AGEE, | ) | |
|     Defendant | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

I.    INTRODUCTION

On October 27, 2005, the Defendant, James Agee, entered a guilty plea to a one-count information charging him with false entries and reports of moneys or securities in violation of 18 U.S.C. § 2073.  He is scheduled to be sentenced by this Court on January 18, 2006.  According to the pre-sentence investigation report, and the plea agreement reached by the parties, the applicable sentencing guidelines range, which, although advisory only, must still be considered by the Court, is a level 10.  Level 10 falls within Zone B and allows for a sentence of probation combined with community confinement or home detention in lieu of imprisonment.  For the reasons that follow, we respectfully request that the Court sentence Mr. Agee to probation, with a period of home detention if the Court deems it necessary.  In addition, due to Mr. Agee's financial circumstances, we request that no fine be imposed and a restitution order requiring only nominal periodic restitution payments be entered by the Court.

## II.   ARGUMENT

Until his plea late last year, Mr. Agee, then a forty-two year old DEA agent, was an inner-city success story. Born in 1962 in Detroit, Michigan to a father who worked at the Ford Motor Company and a mother who was employed as a domestic worker, Mr. Agee was the first in his family for generations to complete college. As a child, Mr. Agee was bused from a tough neighborhood school to a suburban school that he remembers as idyllic for its cleanliness and safety. Many of Mr. Agee's childhood friends are now incarcerated or dead due to their lifestyles on the street.

Mr. Agee's own life was not easy. At age 10, Mr. Agee lost his father to a heart attack and was thereafter raised by his mother, who worked hard to support three children. He later lost his brother to a substance abuse induced heart attack. Mr. Agee's sister also suffered from substance abuse. Mr. Agee, however, steered clear of the dangers of the street and completed both his high school and college education. Upon graduation from college, he was accepted into the United States Drug Enforcement Agency as an agent. He was twenty-two years old.

For the next twenty years, Mr. Agee embarked upon a highly-decorated career as a field agent and later as a supervisor. He first served in his hometown of Detroit before being assigned to New York City, where he worked from 1986 through 1997. In 1987, only two years into his service, Mr. Agee performed valiantly in an extremely violent shoot-out resulting from a compromised DEA undercover operation. Four individuals died in that incident. While taking fire from multiple suspects, Mr. Agee returned fire and killed one suspect. Although shaken by this experience, Mr. Agee continued to

advance in his career. Memories of that violent encounter continue to haunt him, and he recently started receiving treatment for post-traumatic stress disorder.

In 1997, Mr. Agee received the assignment as Country Attaché in Barbados. He was excited about this prestigious assignment and hoped that the environment would be a good one for his family as well. But Mr. Agee soon found the duties and responsibilities of a Country Attaché to be very different from that of an investigative field agent. Trained and gifted as a street agent in the rough and tumble drug cultures of New York and Detroit, Mr. Agee found himself completely unprepared for the diplomatic and policy-making roles he now faced on a daily basis. He felt extremely embarrassed at what he considered to be his relatively unsophisticated background when called upon to brief and/or socialize with U.S. military generals and American and foreign diplomats. His duties frequently included attending cocktail parties or other events at which alcohol was plentiful. His marriage suffered from the growing stress and he and his wife, Vera, separated for a time.

For Mr. Agee, the stress stemming from the physical activity and danger he encountered on the street was entirely different from the stress that arose in Barbados from his embarrassment, feelings of inadequacy, and helplessness. He broke down quickly. Increasingly, he turned to alcohol for solace and, in short order, developed a serious dependency on alcohol. Feeling entirely unsuited for his new role, and adrift in his marriage, his morning routine, which for years had included packing his briefcase and service weapon, came to include also packing a flask of scotch from which to drink throughout the day.

Adding to Mr. Agee's anxiety was increasing pressure from his superiors to improve the statistics for field operations in the region. This anxiety was heightened by Mr. Agee's personal sense that the local police officials were not interested in cooperating with DEA efforts. Feeling that he needed to demonstrate success at any cost, Mr. Agee began a pattern of falsifying forms for reimbursements of official business expenditures. Although he knows the government would have attempted to prove otherwise had this case gone forward to trial, Mr. Agee has steadfastly maintained that he never personally profited from the falsifications. Believing instead that he was cutting through bureaucratic obstacles to poor performance by the field operations for which he was responsible, Mr. Agee admits that he began using funds in unauthorized ways – including, on occasion, directly dispensing funds to individuals or vendors, instead of the local narcotics units – in the misguided belief that he was improving DEA operations. Rather than accounting for these actions, he simply submitted false vouchers.

He fully acknowledges that his actions were inexcusable and illegal. As Mr. Agee has stated:

> *Although I deceived myself into thinking that my wrongful Actions were made only to 'help' DEA efforts, I was never justified in deceiving the United States government and bringing dishonor upon my job and agency. Whatever misguided wishes or illusions I had about 'helping' DEA efforts through my wrongful actions were no excuse. Despite my personal problems at the time, I blame only myself for these mistakes. I should have known better and have chosen to accept sole and full responsibility for my actions.*

The probation office has found that Mr. Agee, indeed, has fully accepted responsibility for his actions. In addition to pleading guilty, Mr. Agee also resigned his position with DEA, after twenty years and one month of dedicated service.

After a life-time of devotion to his law enforcement career, often at the expense of his family, Mr. Agee is focused now on his family's well-being. He knows that his actions have jeopardized his family's security and welfare. He is grateful for the support of his wife – with whom he has now reconciled – and the love of his five children, all of whom he supports financially, even though two do not live with him. Mr. Agee is active with the Pop Warner Football league as well as the Police Athletic Basketball League. A role model to his children, he is deeply embarrassed and shamed by his actions and has not yet found the right time to tell them about his current situation.

For more than a year, Mr. Agee has been undergoing counseling to help him work through a variety of issues. Despite this help, and several prescription medications, Mr. Agee is a despondent man, and suffers from major depression. He needs ongoing counseling and continued access to medication, particularly as his psychiatric assessment indicates that his depression has at times caused him to question whether he wishes to go on living.

Despite all of this, however, Mr. Agee realizes that he is blessed with a great deal of personal support from his family, friends, and colleagues. Mr. Agee is well-liked and respected, within DEA and in his own community. The support of his family, friends and colleagues reflect the true character of a man who over the course of his life has shown himself to be hard-working and steadfast, despite the lapse of judgment that brings him before the Court now.

A felony conviction and its accompanying stigma are a severe punishment to most people, but it is particularly difficult for those who have devoted their lives to enforcing the law. Mr. Agee is such a man. In the inner-city battlegrounds of this country, Mr.

Agee has fought bravely against the evils of drug distribution and for the future of our youths. He has fought for youths like his boyhood friends, who never made it out of their Detroit neighborhood. He has fought for youths like himself, who were luckier and able to take advantage of the opportunities afforded to them. He laid his life on the line for these goals. To Mr. Agee, the loss of his career, his credentials, his service revolver and the accompanying respect and trust that underlie his position as a decorated DEA agent, is a heavy burden to bear. Throughout his adult life, no matter what troubles he has encountered, Mr. Agee was always proud to be a member of an elite law enforcement agency. Now he has lost that identity forever. Such punishment will continue well beyond the day of sentencing.

In imposing sentence, the Court must balance a number of factors. In this case, no public purpose is served by imprisoning Mr. Agee. His conviction alone sends a strong message that the Department of Justice and DEA hold their representatives to an exacting standard, regardless of their intentions or the glory of their past record. Mr. Agee too has learned this lesson. He already has served as an example. Incarcerating him does, however, put him in real jeopardy of physical danger, particularly in light of the many violent individuals he has helped to arrest and put in jail. This fact should not be overlooked by the Court in determining the appropriate sentence in this case.

As part of his plea agreement, Mr. Agee agreed that a guidelines range that includes probation with some period of home detention is appropriate and he stands by that agreement. Under the Supreme Court's decision in *United States v. Booker,* however, this Court has the ability to impose a sentence different than the guidelines range. The Court must determine whether in its discretion, home detention serves any

purpose in this case. We simply request that should the Court decide that a period of home detention is appropriate, that Mr. Agee and his family not be required to pay the costs of any such detention, in light of his current financial situation and pre-existing support obligations.

We further submit that no purpose is served by burdening Mr. Agee and his family with a significant fine or monthly restitution payments that he is unable to make. Mr. Agee's financial picture is strained. He is under a court order to support two of his children, who do not live with him, in the amount of $1792 per month. As a result of his separation from his wife Vera, Mr. Agee is also under court order to support his two boys, ages 9 and 10, in a similar amount. Mr. Agee has worked hard to comply with these obligations for more than a decade and he is dedicated to continuing to do so.

However, except for a brief period twenty years ago, law enforcement work is the only work Mr. Agee knows. He has forever lost the ability to earn a living in that manner. Although he has made active efforts at new employment, including utilizing an employment service, at present, his efforts have been unsuccessful and his family is supported by his wife's income as a teacher's aide.

In light of this, we ask the Court to forego imposing any fine and to consider imposing only nominal restitution payments, such as $50.00 per month with interest waived, so as not to unduly burden Mr. Agee's family. As an alternative, 18 U.S.C. §3663 allows for restitution in services by a defendant if the victim consents. Although the United States has not agreed to such a resolution, this Court should consider the fact that community service – particularly service involving working with youths – would be

especially well-suited to Mr. Agee's circumstances. He has substantial experience working with youths and would be of great benefit to them.

Finally, we request that the Court include mental health and substance abuse treatment and/or counseling as a condition of any probation imposed upon Mr. Agee. He is currently without health insurance and continued treatment and counseling is of critical importance to his well-being.

Mr. Agee has repeatedly demonstrated that he is a person of courage, integrity and good will. He made a serious mistake and has paid a serious price. There is a little doubt that he will ever appear again before a court of law charged with any hint of wrongdoing. There also is little doubt that, if given the chance, Mr. Agee has the fortitude and character to set his life back on track and continue his success story. On behalf of Mr. Agee, his wife and his children, we ask this Court to grant him that chance.

### III.   CONCLUSION

For all these reasons, we respectfully request that the Court sentence Mr. Agee to a period of probation, with a special condition of home detention if the Court deems it appropriate, and either community service in lieu of financial restitution or nominal periodic restitution payments with a waiver of any accrued interest.

Respectfully submitted,

_____/s/_____
Judith L. Wheat (D.C. Bar 431411)
Shanlon Wu (D.C. Bar 422910)
Wheat Wu
1050 17th Street, N.W.
Suite 600
Washington, D.C. 20036
202-496-4963 (phone)
202-466-3226 (facsimile)

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Memorandum in Aid of Sentencing was delivered via electronic filing this 12th day of January 2006 to:

Natashia Tidwell, Esq.
Trial Attorney
Public Integrity Section
United States Department of Justice
10th & Constitution Avenue, NW
Room 12100
Washington, D.C. 20009

                                              _____/s/_____
                                                 Judith L. Wheat